USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/9/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNETTA LUCKEY,

                                        Plaintiff.

    -against-

ST. LUKE'S CORNWALL HOSPITAL, and
MONTEFIORE HEALTH SYSTEM,

                                        Defendants.

No. 20-cv-1161 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Annetta Luckey ("Plaintiff") initiated this action against Defendants St. Luke's Cornwall Hospital ("St. Luke's") and Montefiore Health System ("Montefiore") (collectively, "Defendants") by filing her Complaint on February 10, 2020. (ECF No. 1.) Subsequently, Plaintiff filed an Amended Complaint on July 22, 2020, asserting claims against Defendants for violations of Section 504 of the Rehabilitation Act (the "RA"), 29 U.S.C. § 794, *et seq.*, and Section 292 of the New York State Human Rights Law (the "NYSHRL"). (Amended Complaint ("Am. Compl.") (ECF No. 19).) While the Amended Complaint initially sought injunctive relief as well as monetary relief, Plaintiff abandoned her request for injunctive relief on August 11, 2020. (ECF No. 21 at 2.) Presently before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 27.) Defendants filed a memorandum in support of their motion. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs' Mem.") (ECF No. 29).) Plaintiff filed a memorandum opposing Defendants' motion. (Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss ("Pl's Opp.") (ECF No.30).) Finally, Defendants filed

a reply memorandum in further support of their motion.[1] (Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Defs' Reply") (ECF No. 31).) For the reasons discussed below, Defendants' motion is GRANTED, in part, and DENIED in part.

## **BACKGROUND**

The following facts are derived from the Amended Complaint or matters of which the Court may take judicial notice, are taken as true, and constructed in the light most favorable to Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff, a deaf person whose primary language is American Sign Language and who only possesses a limited comprehension of English (Am. Compl ¶ 9), encountered various difficulties during her hospitalization in 2019, the events of which give rise to this action. On January 23, 2019, Plaintiff arrived at the emergency room of St. Luke's after experiencing a cough and unspecified pain. (*Id.* ¶ 10.) At that time, Plaintiff requested a sign language interpreter, no sign language interpreter was provided, and medical staff attempted at one point to communicate through a video remote interpreter ("VRI") that stopped working. (*Id.*) During intake, Plaintiff allegedly could not convey her entire medical history because St. Luke's medical staff struggled to communicate with her. (*Id.* ¶ 11.) Eventually, Plaintiff was diagnosed with the flu, and was

---

[1] Plaintiff also filed an unauthorized surreply identifying additional authority for the Court's consideration. (ECF No. 32.) Defendants subsequently moved to strike the unauthorized surreply. (See ECF No. 33.) The issues raised in surreply are moot as the Court concludes that the issue discussed therein—*i.e.*, whether emotional damages are recoverable—is premature because Plaintiff did not affirmatively state that she was seeking emotional damages in her requested relief section of her Amended Complaint, and emotional damages are a remedy rather than a cause of action. As the Court does not reach the merits of whether emotional damages are recoverable on a claim under the RA, the Court denies Defendants' motion to strike Plaintiff's surreply as moot.

admitted to the St. Luke's after being monitored in the emergency room for six hours after her arrival. (*Id.* ¶ 12.)

During the following two weeks that Plaintiff was hospitalized, she allegedly experienced further difficulties communicating with St. Luke's medical staff and these difficulties interfered with her ability to understand and participate in her diagnosis and treatment. Within the first few days of her admission, Plaintiff was diagnosed with endocarditis and sepsis but she was unable to understand the diagnoses as she was not provided with a VRI or live interpreter. (*Id.* ¶ 13.) Instead, Plaintiff was provided with a pen and paper to communicate with St. Luke's medical staff about her condition despite Plaintiff's repeated requests for an interpreter and a doctor's possible representation that an interpreter would be coming. (*Id.* ¶¶ 14-15.)

Ultimately, St. Luke's medical staff allegedly determined that the best way to treat Plaintiff's infection would be a "PICC line with IV antibiotics" but, due to difficulties with communication, medical staff was unable to get sufficient information from Plaintiff to insert the PICC line and instead opted for oral antibiotics. (*Id.* ¶ 16.) Although Plaintiff was diagnosed with endocarditis, she was "never able to effectively communicate with any medical staff about her condition, treatment options, or prognosis" and was "discharged [from the hospital] without having an interpreter present and without understanding the seriousness of her condition." (*Id.* ¶¶ 17-18.) She only "became fully aware of the serious medical condition she had" and "that she has a tumor in her heart that will need to be checked every six months" during a follow up appointment with her primary doctor after her discharge from St. Luke's. (*Id.* ¶ 18.)

As a result of the alleged failure to provide Plaintiff with requested auxiliary aids including, *e.g.*, qualified interpreters or VRI, Plaintiff claims that she was unable to effectively communicate with medical providers and asserts that Defendants violated the RA and that Plaintiff "suffered

discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment, prolonged physical pain and unnecessary loss of rights, privileges and property." (*Id.* ¶ 32.)  Likewise, Plaintiff asserts that the same conduct violated the NYSHRL.  (*Id.* ¶ 35-42.)

## **LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted).

## **DISCUSSION**

Defendants seek dismissal of all claims against Montefiore and St. Luke's.  As the bases for dismissal are distinct as between the two defendants, the Court addresses the arguments with respect to each defendant in turn.

### I. Claims Against Montefiore

Rule 8(a) of the Federal Rules of Civil Procedure "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001). Pleadings fail to meet that minimum requirement where allegations "lump[ ] all the defendants together in each claim and provide no factual basis to distinguish their conduct." *Id.*

In sum, Plaintiff asserts a single particularized allegation against Defendant Montefiore – *i.e.*, "MONTEFIORE HEALTH SYSTEM (hereinafter referred to as 'MHS') is located at 111 East 210th Street, Bronx, New York, 10467." (Am. Compl. ¶ 8.) Though Plaintiff took the effort to make a defined short-form reference for Defendant Montefiore, Plaintiff never actually used that defined term in the Amended Complaint. Instead, the only remaining allegations against Montefiore are impermissibly vague group pleadings against "Defendants."[2] For example, Plaintiff asserts that "Defendants failed to comply with the Rehabilitation Act by refusing to provide deaf and hard of hearing individuals [with appropriate auxiliary aids]." (*Id.* ¶ 27.)

In her opposition papers, Plaintiff claims that Montefiore is named as a defendant because, according to Montefiore's public website, Montefiore and St. Luke's are partners and thus they be held jointly responsible for St. Luke's conduct. (Pl's Opp. at 23.) Plaintiff did not plead that Montefiore and St. Luke's are partners in her Amended Complaint, nor include any allegations suggesting that, by the nature of this partnership, Montefiore is responsible for, participates in, or exercises oversight over, St. Luke's accommodation of deaf patients. Nor does Plaintiff allege conspiracy liability, other joint conduct giving rise to liability, or any basis to conclude that St.

---

[2] *N.b.*, the Amended Complaint does not even expressly define "Defendants" to refer to Montefiore and St. Luke's, further evidencing the deficiencies of Plaintiff's sloppy group pleading approach.

Luke's conduct should be imputed to Montefiore. Plaintiff simply failed to grapple at all with any of the number of legal theories that might provide for liability as against Montefiore and instead implored this Court to let it take discovery first before it comes up with a colorable theory for joint or vicarious liability. Plaintiff also fundamentally misunderstands how pleadings work to the extent she thinks that she is entitled to discovery so that she can successfully plead a plausible claim. To the contrary, she needs to assert plausible allegations before she can take discovery. The significant deficiencies in Plaintiff's allegations (or lack of allegations) against Montefiore contravene the mandate of Fed. R. Civ. P. 8(a) as there is no reasonable way to read the Amended Complaint and conclude that Montefiore has fair notice of what conduct it engaged in that gave rise to the claims against it. Even if Plaintiff had plead that Montefiore had a vague "partnership" with St. Luke's it would be insufficient to establish liability.

Accordingly, the Court GRANTS Defendants' motion to dismiss with respect to all claims against Montefiore. Plaintiff's claims against Montefiore are dismissed without prejudice. Plaintiff may further amend her complaint to provide Montefiore with sufficient notice as to the grounds upon which it has been named as a defendant to the extent that Plaintiff has a non-frivolous basis for suing Montefiore. To be clear, stating that two entities are "partners," without more, will likely be insufficient.

## II. Claims against St. Luke's

Though organized in several (repetitive) sections, the gravamen of Defendants' arguments for dismissal of claims against St. Luke's is that Plaintiff failed to adequately plead a prima facie case of disability discrimination under either RA or NYSHRL by failing to sufficiently allege that Plaintiff was excluded from participating in a covered activity solely by reason of her handicap. Defendants alleges that Plaintiff's pleadings of this element are insufficient because: (1) Plaintiff fails to adequately allege ineffective communication; (2) Plaintiff fails to allege deliberate

6

indifference; (3) Plaintiff is at most entitled to nominal damages because emotional distress damages are not available under the RA; (4) inconsistent allegations throughout the Amended Complaint are contradictory and implausible; and (5) even if taken as true Plaintiff's allegations concede that she received effective communication from medical providers. The Court addresses these arguments in turn.

    A.      Applicable Legal Standard Under the Rehabilitation Act and NYSHRL

"Under § 504 of the [RA], '[n]o otherwise qualified individual with a disability in the United States, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance.'" *Loeffler v. Staten Island University Hosp.*, 582 F.3d 268, 274-75 (2d Cir. 2009) (quoting 29 U.S.C. § 794(a)). "Because the NYSHRL likewise prohibits disability discrimination . . . and is construed coextensively with Section 504" courts have considered RA and NYSHRL claims together. *See, e.g.*, *Viera v. City of New York*, No. 15 CIV. 5430 (PGG), 2018 WL 4762257, at *11 (S.D.N.Y. Sept. 30, 2018) (citing *Loeffler*, 582 F.3d at 277; *Williams v. City of New York*, 121 F. Supp. 3d 354, 364, n. 10 (S.D.N.Y. Aug. 5, 2015)). Likewise, the parties encourage the Court to treat the claims together.

"In order to establish a violation of § 504 [of the RA], a plaintiff must show (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is 'otherwise qualified' for the benefit that has been denied, (3) that he has been 'denied the benefits' solely by reason of his disability, and (4) that the benefit is part of a 'program or activity receiving Federal financial assistance.'" *Flight v. Gloeckler*, 68 F.3d 61, 63 (2d Cir. 1995) (citations omitted). In order to establish the third element – the only element contested by Defendants (though they reserve the right to challenge other elements, and the Court does not consider those challenges waived) – Plaintiff must demonstrate that St. Luke's did not provide a means of "effective communication" and thus

7

denied her "meaningful access" to St. Luke's services. *See Loeffler*, 582 F.3d at 275; *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (The RA requires that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made."); *Love v. Cty. of Dakota*, 625 F.3d 494, 500 (8th Cir. 2010) ("the legal standard is effective communication that results in meaningful access").

"Monetary damages [which is the only relief sought here] may be recovered only upon a showing of intentional discrimination. Intentional discrimination does not require a showing of animosity or ill will; it may be inferred when a qualifying 'official,' [ ] or policymaker,] . . . 'acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result.'" *Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019) (cleaned up) (quoting Loeffler, 582 F.3d at 275-276). In order to plead deliberate indifference, as discussed further below, a Plaintiff must plausibly allege that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Loeffler*, 582 F.3d at 276 (quoting *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290 (1998)).

  B.  *Whether Plaintiff has Adequately Pled Ineffective Communication in Light of Provision of Written Notes*

"Under the RA's implementing regulations, a hospital that receives federal funds 'shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care.'" *Loeffler*, 582 F.3d at 275 (quoting 45 C.F.R. § 84.52(c)). Additionally, "[a] recipient . . . that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45

C.F.R. § 84.52(d)(1). Aids are "appropriate" if they ensure "effective communication with individuals with disabilities" and may include interpreters, note takers, and "written materials." 28 C.F.R. § 36.303.

While the RA does not in terms require the use of interpreters, courts have found that deaf plaintiffs have been deprived of "an equal opportunity to benefit from" the hospital's services by the failure of medical staff to provide an interpreter, under certain circumstances. For example, in *Biondo*, the Second Circuit held, under the more demanding standard of a summary judgment motion, that "a reasonable jury could find, given the circumstances, that the failure to provide [an interpreter] deprived [deaf plaintiff] of 'an equal opportunity to benefit from' the hospital's services given her limitations with written English, the length of her hospital stay, and the procedures performed and information imparted during her stay." 935 F.3d at 74.

On the other hand, the RA does "not ensure equal medical treatment, but does require equal access to and equal participation in a patient's own treatment." *Loeffler*, 582 F. 3d at 275. To this end, the RA's "regulations do not require healthcare providers to supply any and all auxiliary aids even if they are desired and demanded." *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014). With respect to the use of written notes, "a hospital may attempt to communicate through written notes only to find that the issue being discussed is too complex for written notes. That does not, in hindsight, render the attempt discriminatory. Only if the hospital failed to provide an alternative auxiliary aid once it became clear that the initial method of communication was ineffective might there be a claim for discrimination." *Juech v. Children's Hosp. & Health Sys., Inc.*, 353 F. Supp. 3d 772, 780 (E.D. Wis. 2018)

Courts have acknowledged that "the task of determining whether an entity subject to the RA has provided appropriate auxiliary aids where necessary is inherently fact-intensive." *Liese v.*

*Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 342–43 (11th Cir. 2012) (citing *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) ("Generally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."); *Randolph v. Rodgers*, 170 F.3d 850, 859 (8th Cir. 1999) (finding that whether a sign language interpreter was required under the RA is a question of fact inappropriate for summary judgment); *Duffy v. Riveland*, 98 F.3d 447, 454–56 (9th Cir. 1996) (concluding that whether qualified sign language interpreter was required under the Americans with Disabilities Act of 1990 is a question of fact inappropriate for summary judgment)).

Oddly, Defendants point to the aforementioned authority concerning the inherently fact-intensive nature of assessing whether certain auxiliary aids are appropriate as a basis for this Court to conclude that Plaintiff failed to adequately allege ineffective auxiliary aids for the purposes of a motion to dismiss. (Defs' Mem. at 9.) The Court agrees with the aforementioned courts that determining whether an auxiliary aid is necessary is inherently fact-intensive and adds that the fact intensive nature of the inquiry strongly weighs against granting a motion to dismiss where the Court is bound by well-pled allegations. Where, as here, Plaintiff alleges that she was unable to communicate through the offered auxiliary aid of written notes due to her limited English language comprehension, that her inability to communicate through written notes became apparent to medical staff (at least) after she was unable to supply information to enable the use of a PICC line, and that no interpreter was offered despite the recognition that written notes were ineffective, she has sufficiently alleged ineffective communication in order to survive a motion to dismiss. *See Biondo*, 935 F.3d at 74 (finding proof of same sufficient to establish a triable issue of material fact on motion for summary judgment).

### C. Whether Plaintiff Adequately Alleged Deliberate Indifference

As mentioned above, compensatory damages are only available if a defendant was deliberately indifferent to a potential violation of the RA, which means that a plaintiff must plausibly allege "[1] that someone at the hospital had actual knowledge of discrimination against the [plaintiff], [2] had authority to correct the discrimination, and [3] failed to respond adequately." *Biondo*, 935 F.3d at 74 (quoting *Loeffler*, 582 F.3d at 276). "[D]eliberate indifference must be a 'deliberate choice[,] rather than negligence or bureaucratic inaction.'" *Loeffler*, 582 F.3d at 276 (citation omitted); *see also A.G. v. Lower Merion Sch. Dist.*, 542 F. App'x 194, 198-99 (3d Cir. 2013) ("'Deliberate indifference requires actual knowledge;' thus, 'allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference.' . . . It . . . require[s] a 'deliberate choice, rather than negligence or bureaucratic inaction.'" (emphasis in original) (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 266 n. 26 (3d Cir. 2013))). At least one court in this circuit previously held that a plaintiff's "allegation that he requested a qualified interpreter, which was not provided, coupled with the absence of any allegation that [hospital] attempted to provide [deaf plaintiff] with effective communication, sufficiently alleges intent." *Naiman v. New York Univ.*, No. 95 CIV. 6469 (LMM), 1997 WL 249970, at *5 (S.D.N.Y. May 13, 1997). By contrast, summary judgment was granted for defendants where "[deaf] Plaintiff's family members made two requests to Patient Services Administration for interpreting services, and it is undisputed that both resulted in immediate efforts on the part of the hospital to find interpretation services." *Freydel v. New York Hosp.*, No. 97 CIV. 7926(SHS), 2000 WL 10264, at *4 (S.D.N.Y. Jan. 4, 2000), *aff'd*, 242 F.3d 365 (2d Cir. 2000).

Though it is a close call, the Court concludes that, for the purposes of a motion to dismiss, Plaintiff has plausibly alleged deliberate indifference. Plaintiff alleges that, in the course of her

11

hospitalization, her inability to communicate with medical staff at St. Luke's prevented her from being able to relay information needed by medical staff in order to enable medical staff to "insert the PICC line" with antibiotics, and this failure to communicate resulted in the use of oral antibiotics instead. (Am. Comp. ¶ 16.) Accordingly, medical staff at St. Luke's were allegedly aware that Defendant's ability to communicate without an interpreter (even with the auxiliary aid of written notes) was so compromised that it disrupted their ability to provide ideal medical services. That is sufficient at this stage to plead knowledge of discrimination. Likewise, though fairly light on detail, Plaintiff's other allegations indicate that staff at St. Luke's had the authority to correct the alleged RA violation—*e.g.*, Plaintiff was at one point provided with a dysfunctional VRI (indicating staff had authority to obtain auxiliary aids)—and that despite knowledge of the potential RA violation, staff at St. Luke's did not adequately respond to the situation—*i.e.*, Plaintiff made repeated requests for an interpreter and was not provided with an interpreter even after the incident in which medical staff witnessed her inability to communicate needed medical information. Accordingly, Plaintiff has plausibly alleged deliberate indifference. *See Naiman*, 1997 WL 249970, at *5.

While the outcome would be much different on a motion for summary judgment, this is not a Rule 56 motion, and Defendants' near exclusive reliance on cases from that procedural posture fails to provide this Court with much of a basis to dismiss the Amended Complaint.

  D. *Emotional Damages*

Defendants further argued that the Court should hold that Plaintiff is not entitled to emotional distress damages as a matter of law and "would still only be entitled to nominal damages." (Defs' Mem. at 18; *see also* Defs' Reply at 9-12.) Plaintiff counters that emotional distress damages are available under the RA based on out-of-circuit authority. (Pl's Opp. at 17-23.) "Both sides seem to be under the misapprehension that [emotional] damages are a cause of

12

action, when they are in fact a remedy." *Doe v. Montefiore Med. Ctr.*, No. 12 CIV. 686 CM, 2013 WL 624688, at *7 (S.D.N.Y. Feb. 19, 2013), *aff'd*, 598 F. App'x 42 (2d Cir. 2015).  Especially considering Plaintiff did not affirmatively mention emotional damages within her request for relief, the Court concludes that it is premature to preclude the possibility of emotional damages (to the extent they are even sought) on a motion to dismiss and will address the availability of emotional damages, should it prove to be ripe and actually at issue, at a later point in this litigation.

       E.       *Whether Plaintiff's Allegations are Contradictory and Implausible*

Separately, Defendants argue that Plaintiff's allegations regarding her inability to communicate with healthcare providers is contradicted by the very presence of detailed allegations regarding her treatment and diagnosis contained within the Amended Complaint.  For example, Defendants argue that Plaintiff contradicted her generalized allegation that "she was never able to effectively communicate with any medical staff about her condition, treatment options, or prognosis" (Am. Comp. ¶ 17) when she alleged that she was diagnosed with the flu and later sepsis and endocarditis (*id.* ¶¶ 12-13).  Plaintiff responds that "[she] never states in her complaint that she understood the medical details of her complaint" and that "Plaintiff's counsel was able to obtain the medical details of her condition and treatment from her medical records for the purposes of drafting a proper complaint" and did not aver that Plaintiff "understood these details and was able to effectively communicate about them while she was hospitalized." (Pl's Opp. at 6.)

Though Plaintiff's counsel surely could have done a better job drafting the Amended Complaint, the Court agrees with Plaintiff that, accepting the allegations as true, there are no apparent implausible or contradictory allegations on the face of the Amended Complaint.  Plaintiff directly alleges that "she was discharged without having an interpreter present and without understanding the seriousness of her condition" and that "[i]t was not until plaintiff had a follow up with her primary doctor, with an interpreter present that she became fully aware of the serious

13

medical condition she had" including "a tumor in her heart that will need to be checked every six months." (Am. Compl. ¶ 18.) Defendants' eisegesis of the Amended Complaint does not strike this Court as persuasive as Plaintiff directly asserts how she came to have an after-the-fact understanding of her condition and treatment through her primary care physician. In other words, Plaintiff's descriptions of her diagnosis and treatment at St. Luke's in the Amended Complaint do not contradict her allegations that she was unable to communicate about her treatment because Plaintiff directly alleges that she only came to possess knowledge about her diagnosis after she was discharged from St. Luke's and does not allege that she understood these matters directly from communicating with medical personnel. Defendants' suggestion that Plaintiff needed to assert the basis upon which she derived each of her allegations and clarify at the end of each paragraph that her description of her treatment and diagnosis was not something that she first-hand understood at the time of her hospitalization strikes this Court as somewhat obtuse and inconsistent with Rule 8(a)'s requirement that a pleading should contain a short and plain statement.

      F.      *Whether Plaintiff Concedes Defendants' Provided Effective Communication*

Defendants also offer two additional arguments under separate section headers imploring this Court to conclude that Plaintiff basically alleged that she has no claim on the face of the Amended Complaint. First, Defendants argue that "Plaintiff's own allegations concede that she communicated effectively with the auxiliary aid she was provided" and that "she is not entitled to . . . compensatory damages." (Defs' Mem. at 8.) Second, Defendants also argue that Plaintiff "concedes that she communicated effectively with written notes by explaining the nuances of her medical diagnosis and treatment." (Defs' Mem. at 12.) The Court views the second argument as a more detailed version of the first argument and addresses them together.

As previously discussed, Defendants' reading of the Amended Complaint is contrived (though not sanctionable, as Plaintiff dramatically contends). For example, Defendants suggest

that Plaintiff's explanation of how the "[m]edical staff determined the second-best oral antibiotics would be used to treat her heart infection rather than a PICC line with IV antibiotics, which she insists would have been the best option" contradicts her allegation that she was "unable to understand" her diagnosis. (Defs' Mem. at 12-13 (quotation marks omitted).)  This reading of the Amended Complaint abuses the common sense meaning of the very paragraphs cited by Defendants as Plaintiff also alleged therein that "due to lack of communication [medical staff] were unable to acquire all the information needed from plaintiff to insert the PICC line." (Am. Comp. ¶ 16.)  Thus, even if Plaintiff conceded that she contemporaneously understood the preferability of the use of a PICC line—which the Court does not believe was conceded given the presence of allegations demonstrating the source of her after-the-fact knowledge (discussed above)—she also alleged that communications with medical staff were so strained that she could not provide sufficient information for medical staff to insert the PICC line.  In sum, the Court concludes from a plain reading of the Amended Complaint that Plaintiff did not in fact concede that she was provided with effective communication or otherwise affirmatively undermine the viability of her claims.

\*     \*     \*

For the reasons discussed above (*see supra* § II(A)-(D)), the Court DENIES Defendants' motion to dismiss with respect to the RA claim asserted against Defendant St. Luke's.

G.     *NYSHRL Claim*

As mentioned above, "the NYSHRL . . . prohibits disability discrimination . . . and is construed coextensively with Section 504" and, accordingly, courts have considered RA and NYSHRL claims together.  *See, e.g., Viera*, 2018 WL 4762257, at *11 (citing *Loeffler*, 582 F.3d at 277; *Williams v. City of New York*, 121 F. Supp. 3d 354, 364, n. 10 (S.D.N.Y. Aug. 5, 2015)).  Likewise, the parties have not submitted distinct arguments related to the two different statutory

regimes and encouraged the Court to analyze both claims together. Accordingly, for the reasons stated above with respect to Plaintiff's RA claim, the Court DENIES Defendant's motion to dismiss with respect to Plaintiff's NYSHRL claim against St. Luke's.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED, in part, and DENIED, in part. Defendants' motion is granted with respect to claims asserted against Defendant Montefiore. Claims against Montefiore are dismissed without prejudice. Defendants' motion is denied with respect to claims asserted against St. Luke's. Plaintiff is granted leave to file a Second Amended Complaint to cure deficiencies identified in this Opinion on or before October 11, 2021. If Plaintiff fails to file a Second Amended Complaint by that date, the Court will deem claims against Montefiore abandoned and will dismiss those claims with prejudice. The remaining parties are directed to complete the case management plan on or before September 27, 2021 (template attached). The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 27 and 33.

Dated: September 9, 2021
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

```
UNITED STATES DISTRICT COURT                                    Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x


                              Plaintiff(s),        CIVIL CASE DISCOVERY PLAN
                                                   AND SCHEDULING ORDER
        - against -



                              Defendant(s).         _____ CV _____ (NSR)
-------------------------------------------------------------x
```

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge